George L. DOWNING, Plaintiff-
Appellant,

William H. Merrill, Plaintiff-Appellant,

v.

Robert L. KUNZIG, Defendant-Appellee.
No. 71–1493.

United States Court of Appeals,
Sixth Circuit.

Feb. 7, 1972.

George L. Downing, in pro. per.

William H. Merrill, in pro. per.

Ralph B. Guy, Jr., U. S. Atty., Detroit, Mich., for appellee; Harold Hood, Chief Asst. U. S. Atty., Detroit, Mich., on brief.

Before MILLER and KENT, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

WILLIAM E. MILLER, Ciruit Judge.

The General Services Administration, by authority of 40 U.S.C. Sec. 318a and 318b, is vested with the power to promulgate all needful rules and regulations for the government of federal property under its charge and control. One such rule provides that "no person while on property shall carry firearms, or other dangerous or deadly weapons, or explosives, either openly or concealed, except for official purposes." [Title 41, Code of Federal Regulations, Sec. 101–19.311]. Because of an outburst of acts of violence, bombings of federal buildings and hundreds of bomb threats, resulting in massive evacuations of federal property, and direct financial loss to the Government,[1] GSA in the fall of 1970 issued to all of its Regional Administrators across the country supplementary instructions directing that immediate measures be adopted at federal facilities within their areas for the protection of federal property and personnel. Specific steps included the use of additional guards and patrols, the identification of persons entering federal buildings, and the denial of entrance to persons carrying suspicious packages unless they should voluntarily submit such packages for examination. By GSA's message of October 15, 1970 it was specifically directed:

> Information copy: All regional directors, PBS because of the recent outburst of bombings and other acts of violence, effective at once, at all entrances to federal property under the charge and control of GSA, where there are guards on duty, all packages shall be inspected for bombs or other potentially harmful devices. Admittance should be denied to anyone who refuses to voluntarily submit packages for examination.

These measures were in effect on December 7, 1970 when plaintiff, George L. Downing, a practicing attorney in Detroit, entered the Federal Building in that city, briefcase in hand, enroute to a hearing in one of the district courtrooms. He was stopped by a guard and advised that because of the rules then in effect he could not proceed above the first floor unless he either submitted his briefcase for inspection or left it behind until his return from court. Upon his refusal to do either he left the building without attending court. Soon thereafter plaintiff instituted the present action in the court below seeking a declaration that the acts complained of resulting in the demand that his briefcase be submitted for a search, and the GSA rules and regulations authorizing such procedure, are unconstitutional and void in that they require or direct an illegal search without a warrant and without probable cause in violation of the Fourth Amendment. The district court sustained the defendant's motion to dismiss the action.[2] In describing the pro-

---

1. These facts are established by the records of GSA as shown by the affidavit of A. F. Simpson, Commissioner, Public Buildings Service, General Services Administration. This affidavit is challenged by plaintiff on appeal for the first time. The objection is based on technical grounds and we think that it comes too late at this stage of the proceeding. Moreover, aside from the affidavit, we take judicial notice of violent outbreaks across the country and the consequent dangers and hazards to public property and the Government's officers and employees. Indeed, judicial notice may be taken of facts indicating that the threat is even more serious than the Simpson affidavit would indicate.

2. Although the district judge in terms disposed of the case by sustaining the defendant's motion to dismiss, we construe his opinion as having assumed that the case was before him as upon a motion for summary judgment, since he made findings on the basis of the pleadings (complaint and amended complaint and motion to dis-

cedure followed in Detroit under the applicable GSA regulations and directives, the trial court found:

> By nature of the guard's placement, all persons entering the Federal Building located in Detroit pass by these officers, and those individuals who carry brief cases, packages, etc., are requested to submit to a cursory inspection in order to ascertain whether they are attempting to conceal explosives or dangerous weapons that might cause personal injury or damage to property. Those persons who refuse to submit to a brief search of the articles they carry are not permitted to transport the articles into other portions of the building. Because of the numerous attorneys who daily transact business in the eleven Federal District Courts located within the building, a procedure has subsequently developed whereby lawyers need only show their Detroit Bar Association membership card to gain unrestricted entrance to the building's premises. Federal employees of the building have also been issued identification cards which permit them unhampered access to their work areas.

The court's conception of the plaintiff's contention was delineated in its opinion as follows:

> Simply stated, it is plaintiff's contention that his right to be protected against any unreasonable searches and seizures of his papers and effects as guaranteed by the Fourth Amendment of the United States Constitution has been, and will continue to be, violated by the previously described rules and procedures. Plaintiff states, "that the interference by defendant and his agents with the plaintiff's free access to the courts without submitting to an unconstitutional and unreasonable search in violation of plaintiff's rights and in violation of the rights of plaintiff's clients to the security of confidential communications threatens to interfere with the plaintiff's earning of the livelihood and with the substantial business of plaintiff's clients."

It is clear that the practice of federal officers in Detroit charged with responsibility to enforce the GSA regulations in no way involved an examination of the personal papers of plaintiff or others entering the Federal Building to learn their contents nor any undue restraint against entry into the building. Assuming that a "search" in the Fourth Amendment sense was actually intended or involved, it must be conceded that it was cursory in nature and made for the strictly limited purpose of determining that no explosives or dangerous weapons were transported into the building.

■ We cannot agree that such "searches," (if they may be so characterized) made under the authority of GSA regulations were "unreasonable" under the Fourth Amendment. As clearly demonstrated by the facts of this case, the threat to federal property as well as to the safety of federal personnel performing essential functions of Government was direct and immediate and likely to materialize into acts of violence and destruction in any part of the nation. For the responsible governmental agency to have failed to act when confronted with such a situation could have resulted in a widespread disruption of the processes of government.

■ The reasonableness of a search under the Fourth Amendment and the question of whether a particular search requires a warrant must depend upon the facts in each case. Here, as stated, the dangers to federal property and personnel were imminent. The Federal Building in Detroit is one of significant importance. It is a ten-story building, housing eleven federal district courts, the offices of congressional and senatorial representatives, the chambers of two members of the Sixth Circuit Court of Appeals, and numerous other federal agencies. Ordinarily of course a person

---

miss) and affidavits filed by both parties. This practice is expressly authorized by

Rule 12(b) of the Federal Rules of Civil Procedure.

should not have his person or property subjected to a search in the absence of a warrant or probable cause to believe that a crime is being committed. Yet to relax the strictness of this rule in the special circumstances shown to exist in this case can in our view have no undermining effect on the protections afforded by the Fourth Amendment. As in most instances under the law competing values must be weighed and a balance struck. Here it seems to us that the balance is clearly on the side of upholding the very limited sort of search contemplated by the GSA regulations and actually conducted by federal guards. In the first place, federal buildings housing federal courts and other governmental agencies are designed to be used strictly for governmental purposes. Although members of the public ordinarily have free access to such buildings, principally in connection with some business of their own, responsible agencies are free to adopt and enforce reasonable rules restricting such public use, such as on holidays and outside certain prescribed hours of the day.[3] Similarly, the manner and times of use may be regulated with respect to regular governmental officers and employees.

It is only a short step further to say that in times of emergency government may take reasonable steps to assure that its property and personnel are protected against damage, injury or destruction by resorting to the very minimal type of interference with personal freedom arising from the acts complained of in this case. The "searches" considered here involve no confiscation of legitimate property, no personal inspection of confidential papers, and no undue restraint on freedom of movement. The only intrusion is a brief stop and a cursory examination of packages or briefcases to determine the possible existence of articles having a potential of danger. In our view, the regulations and acts challenged in this case, in light of the factual background and the dangers confronting the Government, were both reasonable and fair. To require that an officer obtain a warrant to examine the packages of each of the hundreds of persons entering the building or determine as to each person the existence of probable cause would as a practical matter seriously impair the power of government to protect itself against ruthless forces bent upon its destruction. We find here no violation of the Fourth Amendment and no unconstitutional infringement upon the plaintiff's rights.

Affirmed.

---

3. See United States v. Cassiagnol, 420 F.
   2d 868 (C.A.4 1970), cert. denied 397 U.S.
   1044, 90 S.Ct. 1364, 25 L.Ed.2d 654, and

In re Trials of Pending and Future Cases, 306 F.Supp. 333 (N.D.Ill.1969).