Richard HENRY et al., Plaintiffs,
Appellants,

v.

Everett I. PERRIN, etc., et al.,
Defendants, Appellees.

No. 78–1528.

United States Court of Appeals,
First Circuit.

Argued Sept. 5, 1979.

Decided Nov. 21, 1979.

Arpiar G. Saunders, Jr., Concord, N. H., with whom Robert A. Stein and Stein & Viles, Concord, N. H., were on brief, for plaintiffs, appellants.

Steven J. McAuliffe, Asst. Atty. Gen., Concord, N. H., with whom Thomas D. Rath, Atty. Gen., Concord, N. H., was on brief, for defendants, appellees.

John Meyer, Dennis Pizzimenti, Concord, N. H., and Bruce Kenna, Manchester, N. H., on brief, for the New Hampshire Civil Liberties Union, Merrimack County Public Defender's Office, Hillsborough County Public Defender's Office, and Merrimack County Bar Ass'n, amici curiae.

Before COFFIN, Chief Judge, KUNZIG, Judge, U. S. Court of Claims,* CAMPBELL, Circuit Judge.

COFFIN, Chief Judge.

This appeal presents a novel question arising from a challenge to a prison's inspection policy which extends, at both entry

* Sitting by designation.

and exit, to documents in attorney's file. Appellants are a New Hampshire prisoner, Henry, who has been charged with attempted escape and possession of implements of escape, and his court appointed attorney, Stein. Appellees are the warden and other prison officials and employees.

In March of 1978 appellee warden promulgated an inspection policy to "reduce the ability to introduce or remove unauthorized items into or from the . . . Prison." It provided that "All containers, bags, boxes, lunch pails, briefcases, and purses entering or leaving the institution will be presented to the guard at the front door . . . by the transporter for examination." The articulated rationale accompanying the policy statement was that recent evidence had indicated that "staff members and visitors have unwittingly introduced into or removed unauthorized items from the institution." The prison's Manual for the Guidance of Inmates defined as contraband "[a]nything that has not been specifically permitted by proper authority" and that was not listed as items permitted in an inmate's living area. Testimony revealed that contraband included escape plans, pornographic literature, money, and unauthorized letters from or to other prison inmates.

Appellant Stein, appointed to represent Henry in April, 1978, had gone to the prison on two occasions and submitted to a search of his briefcase, since nothing relevant to any client problem was contained therein and he urgently wished to see his client. On at least one other occasion there was no search conducted. On September 6, 1978, however, Stein was carrying only a manila file folder containing the results of his work to date in connection with the charges against Henry—witness reports, policy reports, Henry's criminal record, a written statement of Henry's version of the facts, Henry's suggestions as to trial strategy and tactics, memoranda of discussions of tactics, motions, pleadings, legal research papers, and notes of ideas which had occurred to attorney Stein.

Stein uneventfully passed through a metal detector of the type used in airports. The guard on duty then asked him to turn over the file. After he refused, various negotiations with prison authorities led to a voluntary submission of the file to a state Supreme Court Justice, who made a page by page inspection, sealed the file, and noted that there was no contraband in it. Despite this effort, any chance of peaceful settlement dissolved when attorney Stein was notified that even though he would be permitted entrance, in company with the state's attorney who would certify to the Justice's inspection, the file would still be subject to search on Stein's leaving the prison—to see if Henry had given Stein any contraband to take out.

Whereupon this suit was brought under 42 U.S.C. § 1983 seeking an injunction against searching Stein's "court files" on his entering prison, compensatory and punitive damages, and attorney's fees. The district court, after hearing, held that

"[A]ny claim to the effect that the guards at [the prison] would necessarily read and report to prosecutors any privileged information in attorney's files is *de minimis* in nature in view of the cursory type of examination outlined by the testimony of Warden Perrin. Certainly, if such actions occurred, discipline would be swift and sure, and any harm sustained to the client would be promptly remedied."

This case has proven obdurate to the parties, the position of appellants being utterly incomprehensible to appellees. To appellants' principal claim that their Sixth Amendment right to counsel is infringed by a policy which allows a prison guard to conduct a thorough visual inspection of the files a lawyer brings to prison, appellees have thought it a sufficient response that guards understood they were not to read privileged materials. Inspection, they contend, is not reading; and prison authorities have the right to inspect all visitors for possession of contraband. While appellees would have us conclude that this proposition disposes of this appeal, we view the novelty of the facts as requiring closer analysis.

The novel problem presented by this appeal arises from three factual configurations: the nature of the legal business occasioning the lawyer's visit; the nature of "contraband" under this prison's policy; and the nature of the inspection allowed.

First, as to the nature of the legal problem faced by lawyer and client, we deal with a complaint charging appellant Henry with attempted escape and possession of escape implements. This matter was therefore one in which prison authorities were not disinterested third parties but one in which they were deeply involved. Moreover, the locus of any activities relating to the crime and evidence thereof, real, documentary or testimonial, being likely to be within the prison, it is equally probable that the file of a lawyer investigating the charges and developing any defenses would contain—as was pretty much the case here—names of inmates or prison personnel as putative witnesses, their statements or summaries of what they might say, names and addresses of persons outside the prison, correspondence between client and lawyer, the lawyer's notes of conversations with his client, lists of things to investigate of both a factual and legal nature (such as a defense of alibi), photographs, and sketches. To the extent that a file reflected orderly, professional preparation it might well also be revealing in its size, captions, and index to prison guards familiar with the incident, locale, and cast of characters. In short, trial preparation materials in a case involving escape from prison must almost inevitably contain references uniquely within the knowledge and understanding of prison officials.

Second, as to the nature of "contraband", we face an expansive policy, including within its definition not only weapons, explosives, and drugs but, as the district court noted, "money, unauthorized letters . . escape plans, pornographic literature, and other items." The warden testified that inmate correspondence with other institutions required his approval. Even a letter to an inmate from another institution, which was not authorized by the warden, was contraband. Thus the definition encompasses a wide variety of writings.

Finally, the inspection contemplated by the prison policy, as the district court noted, necessitated looking through each separate page of the attorney's file, even though the guard was not interested in reading each page and was not expected to do more than ascertain whether contraband was present. The warden's testimony tended to proceed in two directions, stating that guards understood they were not to read privileged material but acknowledging that some reading would take place. An envelope from an inmate in another institution, bearing his return address, could be noted. Letters from inmates in the institution to an inmate in another institution would also be observed. As the warden explained, "[I]f we are looking for outgoing mail being smuggled out or mail being smuggled in, [the guard] would have to know what the address said." The guard would "[r]ead a loose envelope, an address on an envelope." The warden acknowledged that if an attorney's file contained an envelope, the guard would have to open the envelope to see whether contraband was inside it. We observe that, wholly apart from any special facility in speed reading, an individual's ordinary perceptions of briefly viewed phenomena, such as stroboscopic images, can be substantial.

This, then, is the conjunction of circumstances—a pending criminal charge involving alleged events within the prison, a definition of contraband which, for some categories, depends upon the substance of written documents, and a type of inspection which involves some visual scrutiny of individual pages by prison guards. Each of these factors sets this case beyond any authority that has been cited to us. Unlike the situation in *Wolff v. McDonnell,* 418 U.S. 539, 576, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), where the nature of the legal matter requiring counsel could have been civil, the issues here were not only clearly confined to criminal charges but to charges arising out of events taking place within the prison. Here, also, the nature of contraband included textual material, the content, source or

addressee of which determined its contraband status, unlike the circumstances of *Smith v. Robbins*, 454 F.2d 696, 697 (1st Cir. 1972) ("By contraband is meant some physical object in addition to the attorney's letter"); *Downing v. Kunzig*, 454 F.2d 1230, 1231 (6th Cir. 1972), ("bombs or other potentially harmful devices"); *McMorris v. Alioto*, 567 F.2d 897, 899 (9th Cir. 1978) (weapons); and *Barrett v. Kunzig*, 331 F.Supp. 266, 270 (D.Tenn.1971) ("firearms or explosives").

Finally, the type of inspection called for under the warden's policy contemplates a minimal scrutiny of individual pages to see if the addressee or writer of correspondence is within the authorization previously given, to see if literature is pornographic, or to see if any writing has to do with escape plans. Contrasted with this is the mere opening of the briefcases to look for weapons and explosives in *Downing, McMorris,* and *Barrett.* In each of these cases it was clear that there was no reading, *Barrett, supra,* 331 F.Supp. at 270, or examination of attorney's papers, *Downing, supra,* 454 F.2d at 1232; *McMorris, supra,* 567 F.2d at 899.

It is instructive also to trace the change in position on the part of the prison authorities in *Wolff v. McDonnell.* A Nebraska prison regulation provided that "[a]ll incoming and outgoing mail will be read and inspected." *Wolff v. McDonnell, supra,* 418 U.S. at 574, 94 S.Ct. at 2983. The justification for this regulation on appeal was similar to that advanced by appellees in this case.

> "Insofar as incoming mail is involved, opening it is the only way such things as drug impregnated stationery, paper money or other type material may be discovered . . .." *McDonnell v. Wolff,* 483 F.2d 1059, 1066–67 (8th Cir. 1973).

When the case came before the Supreme Court on certiorari, the Court noted that the prison authorities "now concede that they cannot open and *read* mail from attorneys to inmates." *Wolff v. McDonnell, su-*

*pra,* 418 U.S. at 575, 94 S.Ct. at 2984 (emphasis in original). The narrow question was whether letters from attorneys may be opened in the presence of the inmate. The Court, in answering affirmatively, was confident that this would not chill communications since the mail would not be read. This confidence, it seems to us, arose not only from the presence of the inmate but from the implicit assumption that contraband was something that could be discerned without reading words: "The possibility that contraband will be enclosed in letters, even those from apparent attorneys, surely warrants prison officials' opening the letters." *Id.* at 577, 94 S.Ct. at 2985.

■ All of these considerations lead us to conclude, on analysis, that the district court's action in discounting the danger of intruding upon appellant Henry's Sixth Amendment right to the effective assistance of counsel as "de minimis", and threatening swift and sure discipline for any prying, while facially appealing as common sense, is neither principled nor practicable. Given the fact, as we have noted, that appellant Henry's Sixth Amendment right to counsel is directly impinged upon, i. e., that important and privileged information in a lawyer's file is vulnerable to disclosure, or at least that the fear of meaningful disclosure is reasonable, by even a brief spot viewing of each page, it is not open to us to deny relief on the ground that harm has not yet occurred.[1] While the Court spoke to a slightly different issue, we think its statement in *Glasser v. United States,* 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942), is applicable here: "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *See also Smith v. Robbins, supra,* at 697. Enough has been shown to place upon the prison authorities the task of demonstrating that the legitimate purposes of the institution cannot be equally well served by means less threatening to individual constitutional

---

1. Similarly, in *Coplon v. United States,* 89 U.S. App.D.C. 103, 191 F.2d 749 (D.C.Cir.1951), the court, having found that government eavesdropping on a conversation between defendant

and his counsel violated the Fifth and Sixth Amendments in principle, thought it unnecessary to inquire whether defendant suffered actual prejudice. *See id.* at 113, 191 F.2d at 759.

rights. We stress that we confine this ruling to the particular congeries of facts before us: a page by page scrutiny for textual contraband by a prison guard of an attorney's file relating to the defense of his inmate client against a charge of attempted escape.

The nexus between the perceived threat to institutional order and security and the present inspection policy merits further exploration. In view of the avowed rationale to avoid the unwitting transportation of contraband by visitors, the possibility is suggested of notifying attorneys of the kinds of contraband which would involve some reading or scanning to identify and which have been unwittingly carried into prison, e. g., money, checks, unauthorized correspondence; and of requiring a certification that no such items are in the possession of the attorney. This would seem to avoid the possibility that an inmate's file would innocently contain such contraband.[2] The kind of routine opening, looking and feeling search approved in *Smith v. Robbins* and *Wolff v. McDonnell* could then suffice to meet the prison's remaining concerns. As for attorneys deliberately disobeying the regulations, the warden testified that he had not been aware of any intentional violations of contraband rules by an attorney. In any event, since attorneys are not personally subjected to search, they could, if so disposed, secrete any contraband on their person.

While we might go on to speculate on the relative efficacy of solely tactile searches, use of fluoroscopes, magnetometers, and other detectors, visual but not auditory surveillance of lawyer-inmate exchanges, before and after searches of inmates, use of nonprison inspectors, and possibly other means, the very listing of such approaches indicates a job not yet done by the district court. It may be that on remand, a way may be found to harmonize the interests of the prison without impinging on appellant's right to counsel or that the institution will itself discern better ways of meeting its real needs. We therefore vacate the judgment and remand the case to the district court with instructions that it receive evidence on the issue whether the needs of the prison can be served with less actual or reasonably feared infringement upon an inmate's right of counsel than the present inspection policy as applied to documentary materials.

We have addressed only the issue of the propriety of the district court's refusal to give injunctive relief. No other issue was discussed in the briefs. While technically the issues of compensatory and punitive damages may not be considered as waived, we would see little likelihood of appellants being able to establish the requisite bad faith or disregard of obvious law to justify any damages award. As we have taken pains to note, this case has presented a novel factual background leading to our restricted ruling.

*The judgment is vacated and the cause remanded to the district court for further proceedings consistent with this opinion.*

---

**2.** The warden denied that notice and would eliminate unintentional violations by attorneys, but his rationale for this opinion, i. e., that people are absentminded, is unpersuasive when weighed in the balance against Sixth Amendment rights.