STATE EX REL. JEREMY C. MCCAMIC

*v.*

JOSEPH W. MCCOY, W. VA. COMM'R *etc., et al.*

(No. 14973)

Decided March 31, 1981.

*McCamic & McCamic and Jeremy C. McCamic* for relator.

*Chauncey H. Browning,* Attorney General, *and Joseph C. Cometti,* Assistant Attorney General, for respondents.

MILLER, JUSTICE:

In this original mandamus proceeding, the relator, a practicing attorney, seeks to challenge the constitutionality of certain regulations promulgated at the West Virginia Penitentiary at Moundsville. He contends the regulations unduly restrict the hours during which attorneys may visit inmates.[1] He also maintains that the regulation requiring the search of his person and briefcase before entering the prison is unconstitutional.[2] Finally, he asserts that the attorney conference room is so inadequate that it provides no privacy for communicating with his client and therefore jeopardizes the attorney-client privilege.

Factually, it is not disputed that relator represents an inmate of the penitentiary and that he was denied access to his client on a Thursday since this was a non-visiting day under the prison regulations. On a subsequent visit, he was denied access to his client because he refused to submit to a "pat-down" search of his body, as required under the regulations.

---

[1] Staff Notice No. 17 of the West Virginia Penitentiary provides:

"2. Visiting for the aforementioned inmates will be between the hours of 8:30 A.M. to 11:00 A.M., and 1:00 P.M. to 3:00 P.M., on either Monday, Tuesday, Wednesday or Friday. Attorneys desiring a visit on any day other than listed must have written permission from the Deputy Warden of Security at least five (5) days prior to the date of visit."

[2] Staff Notice No. 17 of the West Virginia Penitentiary provides:

"5. All attorneys must produce identification and submit to a search of their person, and a visual search of their briefcases (papers will not be read) prior to entering the institution at the Wheel area or the Visiting Room. Refusal to abide by rules and regulations will be cause to refuse admittance."

The State's response is rather general and centers on the fact that courts have recognized that the administration of prisons should be left to prison personnel. They rely primarily on *Bell v. Wolfish*, 441 U.S. 520, 547, 60 L.Ed.2d 447, 474, 99 S.Ct. 1861, 1878 (1979), and our own case of *Harrah v. Leverette*, 165 W. Va. 665, 271 S.E.2d 322, 331 (1980). *See also Tasker v. Griffith*, 160 W. Va. 739, 238 S.E.2d 229 (1977); *State ex rel. Pingley v. Coiner*, 155 W. Va. 591, 186 S.E.2d 220 (1972). However, the management of prisons is not completely unfettered as the foregoing cases recognize. Where prisoners' rights are constitutionally infringed upon, the courts will not hesitate to intervene.

The United States Supreme Court, in several cases, has examined prison regulations to see if they deprive prisoner's of their constitutional rights. In *Wolff v. McDonnell*, 418 U.S. 539, 41 L.Ed.2d 935, 94 S.Ct. 2963 (1974), the court discussed at some length the constitutional right of prisoners to have access to the courts and the right to some sort of legal assistance and found they should have help in preparing civil rights actions as well as habeas corpus petitions. In *Procunier v. Martinez*, 416 U.S. 396, 40 L.Ed.2d 224, 94 S.Ct. 1800 (1974), the Court declared unconstitutional a prison regulation which precluded law students and paralegals from visiting prison inmates. The Supreme Court in *Johnson v. Avery*, 393 U.S. 483, 21 L.Ed.2d 718, 89 S.Ct. 747 (1969), struck down a prison regulation that prohibited inmates from assisting other inmates in preparing writs of habeas corpus and other legal papers. In *Younger v. Gilmore*, 404 U.S. 15, 30 L.Ed.2d 142, 92 S.Ct. 250 (1971), the court affirmed the judgment of a three-judge court which required state officials to provide indigent prisoners with access to a reasonably adequate law library for preparation of legal actions.

In all these cases, the Supreme Court has found a constitutional right of access to the courts under the due process clause which was summarized in *Wolff v. McDonnell, supra*:

> "The right of access to the courts, upon which Avery was premised, is founded in the Due Process Clause and assures that no person will be denied

the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights." 418 U.S. at 579, 41 L.Ed.2d at 964, 94 S.Ct. at 2986.

In West Virginia, we have an explicit provision regarding access to our courts in Article III, Section 17 of our Constitution:

"The courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay."

Furthermore, under W. Va. Code, 62-3-1, we recognized in *State ex rel. Partain v. Oakley*, 159 W. Va. 805, 227 S.E.2d 314 (1976), that attorneys have a duty to represent indigent defendants at trial. At the post-conviction stage, our habeas corpus statute requires appointment of an attorney where the preliminary writ is issued and the relator is indigent. W. Va. Code, 53-4A-4. It can hardly be doubted then, that in light of an attorney's obligation to represent criminal defendants, including those in prison, the attorney occupies a different position than the general public in relation to the penal system.

At attorney's special position is based not only on the foregoing representational obligation with the prison inmate's right of access to the courts, but also upon the fact that the legal profession has an historic role in the administration of justice. We, as well as other courts, have recognized that lawyers are officers of the court as they assist the courts "in the discharge of the vital duties of the administration of law and the resolving of legal controversies." *In re Eary*, 134 W. Va. 204, 208, 58 S.E.2d 647, 650 (1950); 7 Am.Jur.2d *Attorneys At Law* §3 (1980). For this reason, in order to be admitted to the practice of law it is required that an attorney possess a good moral character and have a fitness to practice his profession. Once he is practicing law, if he violates the standards of professional conduct, he is subject to discipline and removal from practice. W. Va. Code, 30-2-1, *et seq*; *In re Brown*, 166 W. Va. ____, 273 S.E.2d 567 (1980); *Committee on Legal Ethics v.*

*Scherr*, 149 W. Va. 721, 143 S.E.2d 141 (1965). With these general principles in mind, we approach the issues in this case.

## I.

### THE SEARCH

Recently in *State v. Moore*, 165 W. Va. 837, 272 S.E.2d 804 (1980), we discussed at some length the various constitutional exceptions that permit a warrantless search and noted that both the Federal and State Constitutions place "the burden . . . on the State to show by a preponderance of the evidence that the warrantless search falls within an authorized exception." 165 W. Va. at 841, 272 S.E.2d at 808.

The State's effort to justify pat-down searches of attorneys before entering the prison rests upon general assertions that the search is necessary for security, primarily to prevent delivery of weapons or contraband to inmates. Such a generalized response may well be sufficient to warrant such regulations for most visitors, including relatives of inmates, who are neither bound by any professional standards of conduct nor required to represent inmates in asserting their court claims. However, in the absence of any specific facts or incidents where attorneys have attempted improper activity, we do not presume that attorneys will engage in conduct that will jeopardize security or impair prison discipline. For this reason, we conclude that the State has failed to sustain its burden of proof to show the necessity of a warrantless pat-down search of attorneys.

This particular issue of pat-down searches of attorneys at prisons has apparently not been before other courts. There are several cases where courts have recognized the special role of attorneys, thereby exempting them from normal prison regulations. In *Case v. Andrews*, 226 Kan. 786, 603 P.2d 623 (1979), the court held that a camera monitoring the attorney's conference room interfered with the constitutional right of effective assistance of counsel and recognized the attorney's role stating:

> "It must be emphasized that attorneys are officers of the court. It should be presumed, absent

a contrary showing, that an attorney representing an incarcerated client will strive to uphold the credibility and standards of the judicial system rather than to subvert them." 226 Kan. at 791; 603 P.2d at 627.

*See also Henry v. Perrin,* 609 F.2d 1010 (1st Cir. 1979), *cert. denied,* 445 U.S. 963, 64 L.Ed.2d 239, 100 S.Ct. 1652 (1980) (warrantless search of attorney's briefcase by prison officials).

We are aware that federal courts have sanctioned a warrantless pat-down search of airplane passengers and their carry-on bags under what is known as the administrative search exception.[3] However, in these cases there was found, as the initial factual threshold, a serious security problem existed, namely, the hijacking of aircraft. These cases required the government to demonstrate that its security measures are reasonably related to their administrative needs, i.e. a safe place, and that the procedures used are the least intrusive with regard to personal privacy, to achieve the government's security need. Thus, in the hijacking area, courts have generally required that there be an initial screening of passengers by a magnetometer and only if the person activates the detector can there be a further pat-down search. *E.g., United States v. Henry,* 615 F.2d 1223 (9th Cir. 1980); *United States v. Davis,* 482 F.2d 893 (9th Cir. 1973); *United States*

_____

[3] The rationale for an administrative search has been addressed by the United States Supreme Court without providing any clear guidelines. *E.g., United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) (search of licensed gun dealer's storeroom upheld); *Wyman v. James,* 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971) (home visits to welfare recipient to determine eligibility upheld); *but see Marshall v. Barlow's Inc.,* 436 U.S. 307, 56 L.Ed.2d 305, 98 S.Ct. 1816 (1978) (inspection for violations of Federal Occupational Safety and Health Act precluded without warrant); *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) and *See v. Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967) (inspection to determine compliance with city housing and fire codes prohibited without warrant). The lack of clarity may be due to various factual considerations that arise from attempting to balance the governmental interests implicated with the privacy interests involved. 3 LaFave, *Search and Seizure* §§10.1-10.11 (1978).

*v. Ruiz-Estrella*, 481 F.2d 723 (2nd Cir. 1973); *United States v. Epperson*, 454 F.2d 769 (4th Cir. 1972), *cert. denied*, 406 U.S. 947, 32 L.Ed.2d 334, 92 S.Ct. 2050. Furthermore, with regard to the pat-down search after activating the magnetometer, most of these aforementioned decisions require that the individual be given the option to avoid the search by not boarding the plane.[4]

We are also aware of cases where administrative searches are conducted before entering courthouses. In *McMorris v. Alioto*, 567 F.2d 897 (9th Cir. 1978), the court upheld a courthouse procedure which required all visitors to pass through a magnetometer and, if the device was activated, they could be required to undergo a pat-down search if they wished to gain admittance. In discussing the search procedure that included attorneys, the court made no reference to the attorneys' special status, but justified the procedure on a past history of violence and threats of violence against California courthouses and judges. The court took care to point out the gradational nature of the search procedure. We believe that *McMorris* falls closer to the airport cases than our present case.[5]

The most analogous case in this area is *Henry v. Perrin*, 609 F.2d 1010 (1st Cir. 1979), *cert. denied*, 445 U.S. 963, 64 L.Ed.2d 239, 100 S.Ct. 1652 (1980), where the court was troubled by a regulation similar to the one in this case requiring the inspection of an attorney's briefcase by prison officials. The court concluded that the prison officials had not demonstrated an adequate factual basis to uphold the privacy intrusion:

---

[4] We recognize that the attorney's special status in regard to prisoners would not apply to airport searches since the attorney travels as a member of the general public. In addition, because of the volume of traffic, it would be unworkable to create a special status category for airport searches.

[5] In *Downing v. Kunzig*, 454 F.2d 1230, 1232 (6th Cir. 1972), involving administrative searches at a Detroit federal building, the trial court had found that as to attorneys "a procedure has subsequently developed whereby lawyers need only show their Detroit Bar Association membership card to gain unrestricted entrance to the building's premises."

"Enough has been shown to place upon the prison authorities the task of demonstrating that the legitimate purposes of the institution cannot be equally well served by means less threatening to individual constitutional rights." 609 F.2d at 1013-14.

It is important to summarize the several considerations that remove the present case from the normal situation where prison officials can promulgate regulations regarding prison visitors. First, we explicitly recognize that attorneys occupy a different position than the ordinary visitors. Attorneys are under a mandatory duty once appointed to represent indigent inmates. We stated in *Rhodes v. Leverette*, 160 W. Va. 781, 239 S.E.2d 136, 140 (1977), that the constitutional right to "effective assistance of counsel on appeal is guaranteed through the Due Process Clause of the West Virginia Constitution, Article III, Section 10." As we have earlier noted, our post-conviction habeas corpus statute, W. Va. Code, 53-4A-4, requires the appointment of counsel for indigent inmates when the preliminary writ is issued. Since, inmates do have a right to access to our courts under Article III, Section 17 of the West Virginia Constitution, this right can only be effectively utilized by the assistance of attorneys. To have that assistance, attorneys must be able to meet with their clients at the prison.

We also recognize that attorneys occupy a professional standing as officers of the courts. This standing demands high moral and ethical conduct and the failure to comply with these standards can lead to disciplinary action including the suspension or loss of a license. For this reason, we do not presume that they would engage in any conduct that would jeopardize the security or discipline at the prison.

Because of our constitutional and statutory obligations placed on attorneys in regard to representation of prison inmates, in order to justify a prison regulation requiring a physical search of their person and briefcase upon entering a prison, the State must show some factual basis that would warrant the conclusion that attorneys have created some

type of security or discipline problem with regard to the inmates. No such factual justification is made by the State in this case and as a consequence, there is an initial failure to justify the warrantless search. Since there is an absence of such factual justification for the search we have no need to consider whether the regulation is overboard because it fails to incorporate some least restrictive alternative other than a pat-down search.

## II.

### VISITATION HOURS AND INTERVIEW FACILITIES

In *Procunier v. Martinez*, 416 U.S. 396, 40 L.Ed.2d 224, 94 S.Ct. 1800 (1974), the Supreme Court stated that as an incident to inmates' due process right of access to the courts:

> "This means that inmates must have a reasonable opportunity to seek and receive the assistance of attorneys. Regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid. Ex parte Hull, 312 US 546, 85 L Ed 1034, 61 S Ct 640 (1941)." 416 U.S. at 419, 40 L.Ed.2d at 243, 94 S.Ct. at 1814.

The respondent in its supplemental brief concedes that visiting hours between eight to five on weekdays would be a reasonable time period. Recognition is also made by respondent that there may be special circumstances that would warrant visitation outside of these regular visiting hours because of the need to secure an inmate's signature or statement in connection with a pending court hearing. To this extent we perceive that the respondent is willing to modify its visiting hour schedule for attorneys and in light of this, we order that the visiting hours for attorneys be so modified. Because of the geographic isolation of Moundsville from the rest of the State, it is obvious that the present restrictive visiting hours can work a hardship on an attorney who comes from the southern part of the State and wishes to avoid spending two days to confer with an inmate.

In regard to the attorney interview room the respondent also concedes that the present facility is not adequate and proposes to construct three interior rooms adjacent to the main visitor's room. We believe that such proposal is reasonable, based on the time schedule proposed that construction would start no later than July 1, 1981. We, therefore, conclude that this issue need not be further discussed.

For the foregoing reasons, we conclude that the regulations regarding the search of attorneys and their briefcases is invalid and that the respondent proceed to alter the visiting hours and to provide the attorney conference room as set out in its proposal herein. It is, therefore, ordered that a moulded writ of mandamus is hereby issued for these purposes.[6]

*Writ as moulded awarded.*

---

[6] Our cases recognize the use of a writ of mandamus to challenge the validity or the constitutionality of an administrative regulation or statute. *E.g., State ex rel. West Virginia Housing Development Fund v. Copenhaver,* 153 W. Va. 636, 171 S.E.2d 545 (1969); *Carter v. City Bluefield,* 132 W. Va. 881, 54 S.E.2d 747 (1949).