**Richard H. DAVIS, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 86–201.

District of Columbia Court of Appeals.

Argued Sept. 9, 1987.
Decided Oct. 26, 1987.

Robert M. Greenspan, Landover, Md., for appellant.

Patricia A. Riley, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell and Mary Ellen Abrecht, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before PRYOR, Chief Judge, MACK, and STEADMAN, Associate Judges.

PER CURIAM:

Appellant seeks reversal of the trial court's denial of his motion to suppress evidence obtained as a result of a warrantless search. Further, appellant argues that the trial court erred in holding that the search was consensual, and therefore, a recognized exception to the warrant requirement of the Fourth Amendment. In the alternative, appellant contends that the search was unreasonable and thereby prohibited by the Fourth Amendment. We disagree. The trial court properly denied appellant's motion to suppress evidence, as appellant voluntarily consented to a search of his bag. We find that the search was reasonable and we accordingly affirm the trial court's ruling.

## I.

On September 16, 1985, appellant, Richard H. Davis, went to the East Potomac Building at 605 G Street, Northwest, a building housing both private and government offices—federal and local. Appellant, a physician licensed to practice in Pennsylvania, sought to enter the building to pay a fee for an examination required to practice locally. Pursuant to the building's security policy, all bags were searched before admittance to the main floors. There was a sign in the front of the building, directly opposite the security officer's desk, which warned that bags, purses, and briefcases would be checked before entering the building. Further, visitors were required to sign their names and indicate their floor destinations in a book kept by the security officer.

Upon entering the building,[1] appellant was told that his bag, a backpack, would have to be searched before he would be allowed to enter. He gave his bag to the security officer; the officer, who was looking for weapons, opened the bag and uncovered a gun case containing a loaded revolver. The gun was seized and appellant was arrested. Thereafter appellant was charged with carrying a pistol without a license (D.C.Code § 22–3204 (1981)), failure to register a firearm (D.C.Code § 6–2311(a) (1981)), and unlawful possession of ammunition (D.C.Code § 6–2361 (1981 & 1987 Supp.)). Appellant filed a motion to suppress the confiscated evidence. After a hearing the motion was denied. On November 21, 1985, appellant entered a conditional plea of guilty pursuant to Super.Ct. Crim.R. 11(a)(2) to the pistol and ammunition charges.[2] This appeal followed.

## II.

▇ The record makes it abundantly clear that, whether we employ a pure voluntary consent or implied consent standard, appellant consented to the search and cannot complain of any violation of his Fourth Amendment rights.

It is well-settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is *"per se* unreasonable ... subject only to a few specifically established and welldelineated exceptions." *See Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973) (citing *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)); *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564 (1971); *Chambers v. Maroney,* 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970). One of the well-delineated exceptions to the warrant requirement of the Fourth Amendment is consent. *Id.*

Appellant argues that he did not consent to the search, and that he turned over his bag to the security officer because she was an armed officer. Further, appellant contends that he had a right to be informed explicitly of his right to refuse to consent to a search of his bag. Given the facts, appellant's contentions are rendered meritless.

The Supreme Court, in *Schneckloth,* articulated the applicable standard that must govern our determination of the consent issue. When a search is non-custodial in nature, and the state attempts to justify a search on the basis of consent, the Fourth and Fourteenth Amendments require the state to establish that the consent was voluntarily given. Consent must not be the result of duress or coercion, express or implied. This is a factual determination which is derived from the totality of circumstances. Finally, "while the subject's knowledge of a right to refuse is a factor to be taken into account, *the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent."* 412 U.S. at

---

1. There is conflicting testimony as to how many times appellant entered the building. The trial judge resolved the testimonial discrepancy in favor of appellee, finding that appellant had entered the building twice.

2. The government entered a nolle prosequi to the unregistered firearms charge. Appellant was sentenced to two concurrent jail sentences of thirty days.

249, 93 S.Ct. at 2059 (emphasis added; footnote omitted).

The totality of circumstances test incorporates numerous factors into the determination of the voluntariness of consent: evidence of *minimal schooling, low intelligence,* and the lack of any effective warnings to a person of his rights. *Id.* at 248, 93 S.Ct. at 2058. Appellant gains no support from any of these factors—he is a physician; he has had a significant educational background; and he was told verbally that his bag would be searched upon entering the building. His knowledge of a right to refuse consent, a knowledge not required to be specifically proven, can be inferred from the totality of circumstances.

There is no question that appellant was informed that his bag would have to be searched before he would be allowed to enter the building. His own testimony negates that any demands were made upon him or that there was a forcible taking of the bag. Indeed, appellant testified that "I gave it [the bag] to her [security officer]." Asked if he had voluntarily handed over the bag, he answered, "That's correct." *The record shows no sign of coercion or duress.* In fact, appellant testified that if the security officer had asked him, "may I search your bag," or words to that effect, he would have responded by saying, "yes, of course." Moreover, appellant's testimony indicated his awareness of search procedures in similar situations: "I usually hand over the bag without any problems.... I have been exposed to various searches at various locations."

Appellant also confirmed that he *knew* the contents of his bag. It is counterintuitive to suggest that, while knowing there was a loaded gun in his bag, appellant should have expected the right to explicit warnings that he had a right to refuse the search. He knew he was carrying an unregistered weapon, and if he wanted to avoid any legal consequences flowing from this conduct, he should not have entered the building with the gun.

The trial court descriptively summarizes the record, specifically utilizing a totality of circumstances standard, on the issue of consent:

> Mr. Davis [Appellant], who is apparently a physician in some other jurisdiction, is in any case, not an uneducated person, and surely he must know that if he didn't want to be searched he could, at least, object, in which case any subsequent search would be less easy to characterize as a voluntary consent search. *He did not object.* There is no evidence that he did. He said he didn't because she was a police officer, and that may be true, but that doesn't make what would otherwise be voluntary consent involuntary, when there is not a shred of evidence that the officer used any coercive means, even any intimidating means to make the request for the search or to carry it out.... Even in the traditional sense of consent, Mr. Davis could be said to have given his voluntary consent to search. [Emphasis added.]

Even if appellant did not see the sign which warned all persons seeking to enter the building that they would be searched, his experience would have imputed the content of that warning. In short, appellant had a number of options which he did not consider. The trial court concluded:

> [i]f he didn't want to be searched, *he had absolute control over whether or not he would be searched by not going into the building.* He could have left his bag at home; he could have left it in a locker at the bus station; he could have gone in without contraband and not worried about the search. He could have done any number of things which would not have required him to give up in any way, his Fourth Amendment rights. [Emphasis added.]

Thus, on these facts, it is clear that appellant voluntarily gave his bag to the security officer. Appellant's claim must fail under the totality of circumstances test.

■ The trial court also analyzed the facts in the instant case under the implied consent standard. This analysis involves a merger between the administrative search

exception[3] to the warrant requirement and notice: in the words of the trial court, "[t]he question is whether the security measures used, including the search of the bags of persons who come into the building were reasonably related to the circumstances that necessitated the search, and whether fair notice was given to anybody that entered the building that they would be searched." Once again, the facts of the instant case illustrate conclusively the weakness of appellant's position. Putting aside for the moment the reasonableness of the security measures, discussed in section III *infra,* there can be no question of fair notice. The trial court concluded that "the sign gave all who entered, fair notice, if they chose to enter they would be searched, they need not enter, or they could leave what they did not want searched somewhere else before they entered."

◼ The essence of implied consent is that there is a knowledge of choice. Thus, the key question does not involve a resolution of the issue of whether appellant actually saw the sign; rather, it must be determined if those who entered the building had notice of a *reasonable* search policy. *See* section III, *infra.* It is a question of the adequacy of procedures, employed by the security officers, to inform those entering the building of the search policy. This provides those entering the building with a choice; that is, whether to enter the building or not. If appellant did not see the sign, he certainly heard and understood the security officer when she informed him that his bag would have to be searched. Therefore, when appellant sought to enter the building, he impliedly consented to a search of his bag. Notwithstanding the voluntary nature of appellant's consent, which has already been established on the

record, the facts establish that everyone who entered the building impliedly consented to the search. They had a choice, and if they chose to enter, they would be subject to a search. On the facts, we agree with the trial court that "it was a reasonable Fourth Amendment intrusion placed on people who chose to enter that particular building *after being notified that if they choose to enter,* their bags would be searched (emphasis added)."

### III.

◼ We disagree with appellant's contention that the trial court held the administrative search exception to the Fourth Amendment warrant requirement inapplicable to this case. It is clear from the record that, while the trial judge was concerned about the possibility of overbroad searches, he properly held this search to be reasonable under this exception.

There are three factors which must be balanced in the administrative search context: (i) the public necessity in requiring a search; (ii) the efficacy of the search procedure; and (iii) the degree of intrusiveness of the search. *See United States v. Skipwith,* 482 F.2d 1272 (5th Cir.1973), and *United States v. Davis,* 482 F.2d 893 (9th Cir.1973). In determining the ultimate question of whether or not the search was reasonable, the trial court balanced these three factors.

◼ In the instant case, there is a definite public necessity that requires a search. This case fits within the framework of the airport and courthouse cases decided under the Fourth Amendment.[4] The East Potomac Building is a government building housing federal, district, and private offices. In *McMorris v. Alioto,* 567 F.2d 897, 899 (9th Cir.1978), the court stat-

---

**3.** In our view, the trial court, contrary to appellant's argument here, did not explicitly rule that the administrative search exception was inapplicable to the instant case. Rather, the trial court expressed concern about the potential for overbroad searches which we address in section III *infra.*

**4.** While the court did not explicitly hold that the administrative search exception was inapplica-

ble, it nevertheless had problems with the possibility that searches, such as the one in the instant case, would become overly instrusive. Thus, the court had conceptual difficulties with the efficacy of the search procedure and the degree of intrusiveness involved. However, on these facts, the court was satisfied that the search was reasonable.

ed that "[t]he search must be clearly necessary to secure a *vital governmental* interest, such as protecting *sensitive facilities* from a real danger of violence." Here, there is a vital governmental interest, as this is a government building which certainly can be characterized as a "sensitive facility." As such, the instant case fits squarely within the proposition of *McMorris* that limited warrantless searches of persons seeking to enter *sensitive facilities* may be lawful under the Fourth Amendment. As a sensitive facility, housing among others the Office of Forensic Psychiatry and federal governmental offices, the public necessity demands that this facility be protected. The record indicates two instances where threats have been made against employees of the agencies housed in the building, and there has been one other instance where a weapon has been found by a search of persons entering the building. There can be no doubt in this case that the government must be afforded the right to conduct limited warrantless searches. *See Downing v. Kunzig,* 454 F.2d 1230 (6th Cir.1972) (the court took judicial notice of the fact that threats of violence made limited warrantless searches necessary before entering the courthouse). The real threat of violence coupled with the sensitive nature of the facility require searches of those entering the building.

The trial court combined its analysis of the efficacy and intrusiveness of the search, and concluded that the search was "inefficient." The word, "inefficient," may or may not be a misnomer.[5] In any event, the search was neither inefficient nor inefficacious since, as the record clearly shows, it uncovered the object which was the impetus of the search policy.[6] While the search was not inefficient, it could, in other circumstances, have approached the point of being overbroad. Even though the trial

court found that the search policy could have been less intrusive, the search still did not rise to the level of a full-blown *Terry*[7] frisk which in the absence of a reasonable articulable suspicion, is unconstitutional. Indeed, the trial court concluded that the search was reasonable in scope and legitimate in its purpose:

> [T]he officer's testimony is that her primary purpose was to search for weapons, *she did not look through the bag for anything which was not a weapon,* that she stopped immediately when she found what she thought was a weapon, and when she discovered that it was a weapon, *discontinued* her search. [Emphasis added.]

The search, in the instant case, is the very type of limited warrantless search that is recognized as an exception to the requirement of a warrant. The search of appellant's bag was not a rummaging expedition; it was a targeted search which uncovered a dangerous weapon. On these facts, the trial court properly found it to be reasonable under the Fourth Amendment.

In view of the trial court's legitimate concern, however, about the potential for overbroad searches, we add the following comment. This case is an administrative search case; however, it arises under a different factual context from those searches involving sophisticated electronic sensory devices. Therefore, problems of overbroadness may arise given the added intrusiveness of the search.

▮▮▮▮ It should be noted that even in a less intrusive context such as airports which use magnetometers, there is still the possibility that a search may be too broad: "of course, routine airport screening searches will lead to discovery of contraband and apprehension of law violators. This practical consequence does not alter the essentially administrative nature of the

---

**5.** The trial court explained that the search was not limited to the need which gave rise to it.

**6.** There was testimony at the suppression hearing which clearly suggests that the search of bags, purses, and briefcases could become overly intrusive. One of the security officers stated: "if they have a purse, we go through that, to

check to see if there is any narcotics or anything that is illegal that the law forbids you from having." However, the security officer stated that the particular purpose of the search was to uncover weapons.

**7.** *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

screening process, however, or render the searches unconstitutional." 4 LA FAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 10.6(c), at 15 (1987). Inevitably, there may be times when a protective search will uncover criminal evidence. Even where a less intrusive means of search is available through the use of a magnetometer, there is still the possibility of uncovering items that are not objects of the search. The overriding concern is the reasonableness of the search. In the absence of probable cause or, at the very least, reasonable suspicion, an administrative search should not be a criminal search designed to specifically uncover incriminating evidence. However, if a reasonable and limited administrative search uncovers criminal evidence, it should not be invalidated. In the instant case, the search was reasonable as it uncovered the object of the search and ceased. The search was efficacious and limited in its intrusiveness. It is interesting to note that the trial court suggested that it would not be reasonable for the court, on Fourth Amendment grounds, to require all building authorities that want to institute security procedures to do so only with the most sophisticated electronic equipment. There must be a balance, one that preserves the most precious of individual rights and, given the facts of this case, the government's interest in protecting its property and employees. *See Lucas v. United States*, 411 A.2d 360, 363 (D.C. 1980) (balancing the need to search against the invasion which the search entails).

The Court of Appeals for the Sixth Circuit, in *Downing v. Kunzig*, characterized the reasonableness of a search which was identical in scope to the one in the instant case:

> The "searches" considered here involve no confiscation of legitimate property, no personal inspection of confidential papers, and no undue restraint on freedom of movement. The only intrusion is a brief stop and a cursory examination of packages or briefcases to determine the possible existence of articles having a potential of danger.

*Id.* 454 F.2d at 1233. The court, in *Downing*, concluded that a search of bags, if limited in scope and purpose, was permissible under the Fourth Amendment. Here, the facts, revealing a necessity intensified by events occurring over the fifteen-year period since the issuance of that decision, lead us to the same conclusion. Appellant consented to the search, and the search was reasonable.

*Affirmed.*