567 F.2d 897
 53 A.L.R.Fed. 881
 S. Carter McMORRIS, on behalf of himself and all other
persons similarly situated, Plaintiffs-Appellants,
v.
Joseph L. ALIOTO, Mayor of the City and County of San
Francisco, Donald Scott, Chief of Police of the City and
County of San Francisco, Washington Garner, Chairman of the
Police Commission of the City and County of San Francisco,
Marvin Cardoza, Police Commissioner of the City and County
of San Francisco, Defendants-Appellees.
 No. 75-2375.
 United States Court of Appeals,
Ninth Circuit.
 Jan. 18, 1978.
 
 S. Carter McMorris, pro se.
 Burke E. Delventhal, City Atty. (argued), San Francisco, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before CHOY and KENNEDY, Circuit Judges, and WILLIAMS,* District Judge.
 KENNEDY, Circuit Judge:
 
 
 1
 The sole issue in this case is whether a limited search conducted as a condition of entering a state courthouse is consistent with the constitutional prohibition against unreasonable searches and seizures.
 
 
 2
 S. Carter McMorris, a member of the State Bar of California, brought an action in the federal district court pursuant to 42 U.S.C. § 1983 seeking damages and declaratory and injunctive relief. McMorris alleged that inspection procedures at the San Francisco Hall of Justice deprived him of his fourth and fourteenth amendment right to be free from unreasonable searches and seizures. The district court granted summary judgment in favor of the defendants. McMorris appeals. Because we believe that the search procedures did not infringe McMorris' constitutional rights, we affirm.
 
 
 3
 The Hall of Justice in San Francisco is a seven-story building. It contains the central offices of the police department of the City and County of San Francisco, including the police administration offices, the bureau of inspectors, the crime laboratory, and the police communications center. Also located in the building are the offices of the county district attorney and the public defender. Finally, the building is the site of the chambers and courtrooms for the criminal divisions of the superior and municipal courts for the County of San Francisco.
 
 
 4
 In May, 1974, a San Francisco superior court judge ordered that certain search procedures be instituted at the entrance of the Hall of Justice. The inspections were conducted by city employees, under the supervision of a San Francisco police captain. All persons entering the building, other than Hall of Justice employees and peace officers, were required to pass through a magnetometer (metal detector). A visitor who activated the device was free to leave the Hall of Justice without further search and without questioning. We infer from the record that if an individual activated the magnetometer, he could empty his pockets of metals and pass through a second time. If, after this second pass, the individual continued to activate the device, he would not be admitted into the courthouse unless he submitted to a pat-down search. It is explicit in the record that pat-down searches were conducted only if the visitor first gave express consent. Officers would also inspect briefcases and parcels, but were specifically instructed not to examine written material. The officers were further directed to inspect only those briefcases and parcels in which weapons could be concealed.
 
 
 5
 Those cases that sustained limited searches of persons seeking to enter sensitive facilities recognize an exception to the general requirement of the fourth amendment that searches are proper only if conducted pursuant to a lawful warrant. United States v. Davis, 482 F.2d 893 (9th Cir. 1973); Downing v. Kunzig, 454 F.2d 1230 (6th Cir. 1972). Care must be taken so that the exception is not unduly extended. Decisions of this court, sensitive to such concerns, have given strict scrutiny to any system used to screen persons entering a public place. The search must be clearly necessary to secure a vital governmental interest, such as protecting sensitive facilities from a real danger of violence. United States v. Davis, supra; United States v. Miles, 480 F.2d 1217 (9th Cir. 1973); cf. Collier v. Miller, 414 F.Supp. 1357 (S.D.Tex.1976) (search for alcoholic beverages at college stadium). The search must be limited and no more intrusive than necessary to protect against the danger to be avoided, but nevertheless reasonably effective to discover the materials sought. The inspection must be conducted for a purpose other than the gathering of evidence for criminal prosecutions. To indicate this, we have designated limited searches at sensitive facilities as "administrative searches." United States v. Davis, 482 F.2d at 908. With these general principles in mind, we turn to a discussion of the instant case.[1]
 
 
 6
 The initial inquiry is whether a vital state interest justified the use of some search procedure at the San Francisco Hall of Justice. Both this court and the district court may take judicial notice that threats of violent acts directed at courthouses have given rise to an urgent need for protective measures. See Downing v. Kunzig, 454 F.2d 1230 (6th Cir. 1972), cited with approval in United States v. Miles, 480 F.2d at 1219. In some cases judicially noted facts may be sufficient by themselves to justify a finding that a vital state interest establishes the necessity for a regulatory search. In any event, the need for the search is established in this case both by facts judicially noted and by specific averments in the record.
 
 
 7
 The record contains references to specific instances of bomb threats and bomb attacks directed at San Francisco police stations, Oakland police stations, and the Los Angeles federal building. The record also refers to a violent incident that occurred at a state courthouse in neighboring Marin County in 1970. During that incident, terrorists kidnapped three jurors and a state prosecutor and killed a superior court judge. These facts lend substantial support to the conclusion that the threat of violence at the San Francisco Hall of Justice at the time the complaint was filed justified a limited search procedure.[2]
 
 
 8
 Our finding that a serious threat of violence existed at the Hall of Justice is also supported by affidavits filed with the district court by the superior court judge who ordered that the search procedures be established. In those affidavits, the judge recited the facts on which he relied in issuing his order. His first affidavit stated that before the search procedures were used, persons attempting to enter the spectators' section of his courtroom had been found with weapons and conforming ammunition on their persons. In a supplemental affidavit, the judge advised the district court of a particular bomb threat directed at the Hall of Justice.
 
 
 9
 These facts demonstrate a sufficient basis for instituting the challenged search procedure. The serenity of the court of appeals is not so debilitating that we fail to appreciate the real dangers posed by threats of violence directed at other courthouses and government facilities.
 
 
 10
 We are also satisfied that the search procedures in this case were intended to deter violence directed at the Hall of Justice, and not to accomplish some ulterior or improper objective. The record is devoid of any indication that the search was a mere subterfuge designed to gather evidence to be used in criminal prosecutions. The officers who conducted the search were specifically instructed to limit their inspection to the detection of weapons and to avoid conducting any further search of persons or property.
 
 
 11
 The methods of effecting the limited searches were reasonable. Our description of the techniques used makes it apparent that they met the requirements mandated by the fourth amendment. A magnetometer is a relatively inoffensive method of conducting a search, and it is less intrusive than alternative methods. The limited search for weapons that might be contained in briefcases or parcels was an additional procedure necessary to ensure fully the effectiveness of the inspection and was conducted in the least intrusive manner possible. The procedures used were therefore appropriate in this case.
 
 
 12
 Even where the necessity of a limited regulatory search has been established and the manner of conducting the search has been found reasonable, we have sustained such searches only where persons subject to the search have given what we have termed "implied consent." United States v. Davis, 482 F.2d 893, 913 (9th Cir. 1973); see United States v. Homburg, 546 F.2d 1350, 1352 (9th Cir. 1976). In this case, McMorris insists that he did not consent to the searches at the Hall of Justice: He seeks a declaration that the procedures are unlawful. He attempts to distinguish cases upholding analogous searches at airline terminals on the ground of consent by pointing out that in this case, he is either compelled to submit to the search at the Hall of Justice or required to forego the practice of law and risk being found in contempt of court for failing to appear at those proceedings in which he is attorney of record.
 
 
 13
 We acknowledge that persons entering the Hall of Justice do not consent to the search in the full and generally accepted meaning of that term. Nor do we doubt that their consent in these circumstances would be insufficient to constitute the voluntary consent, frequently motivated by a desire to cooperate with law enforcement officials, necessary to validate a warrantless, full-scale search for evidence of a crime. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Nevertheless, the limited regulatory search challenged here is performed only after the individual seeking to enter the courthouse has consented, as that term is used in our previous decisions upholding limited searches. United States v. Davis, supra; United States v. Homburg, supra. Persons entering the Hall of Justice are not physically coerced to submit to the magnetometer search or the briefcase and parcel inspection. They may leave the premises at any time, even after activating the magnetometer. They are apparently given more than one opportunity to pass through the magnetometer. Finally, even after activating the device, a person may not be subjected to a pat-down search unless he fully and voluntarily agrees to it. He is under no compulsion to submit.[3]
 
 
 14
 The requirement that a person give this qualified consent to the search strictly circumscribes the state's authority and validates the limited intrusion at issue here. Air travel, for many persons today, is all but a necessity. Nevertheless, we have held that passengers must consent to a limited magnetometer search before boarding an airplane. The situation here is not significantly different. Although an attorney's consent to a search is exacted as the price of entering the courthouse to discharge duties necessary to his profession, the search is nevertheless consensual in the same way as in the airport search cases. The regulatory search in this case was therefore consistent with fourth amendment principles as delineated by previous opinions of the court.
 
 
 15
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable David W. Williams, United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 A search directed at persons entering a government facility from which the public is generally excluded may involve considerations wholly different from those expressed here. Cf. Adderley v. Florida, 385 U.S. 39, 41-42, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966) (jail)
 
 
 [2]
 As further support for our conclusion, we note that the General Services Administration has authorized regulatory search procedures at federal office facilities. See 41 C.F.R. § 101-20.312 (1976)
 
 
 [3]
 However, there may be instances where an individual's behavior may be such that authorities have reason to conduct the type of pat-down search permitted by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). See United States v. Homburg, 546 F.2d 1350, 1352 (9th Cir. 1976)