**John C. JUSTICE, Plaintiff–Appellant,**

v.

**Richard ELROD, Sheriff of Cook County, Illinois, and Harry G. Comerford, Chief Judge of the Circuit Court of Cook County, et al., Defendants–Appellees.**

No. 86–3092.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 18, 1987.

Decided Nov. 2, 1987.

Rehearing and Rehearing En Banc Denied Nov. 30, 1987.

Spencer W. Waller, Freeborn & Peters, Chicago, Ill., for plaintiff-appellant.

Madeleine S. Murphy, State's Atty. of Cook County, Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, and CUMMINGS and POSNER, Circuit Judges.

POSNER, Circuit Judge.

John Justice went to the Richard J. Daley Civic Center, in Chicago, to file a pleading in a Cook County circuit court. He was told by sheriff's police that he couldn't enter the building without being searched. He refused to agree to this indignity, and went away. He then brought this suit against the sheriff, the chief judge of the circuit court, and other officials, claiming that to condition his right to enter the building on his consenting to be searched violated his constitutional rights. The de-

fendants filed a motion to dismiss, which the district court granted, 649 F.Supp. 30 (N.D.Ill.1986), stating:

> When Justice's claims are properly viewed in Fourth and Fourteenth Amendment terms, *McMorris v. Alioto,* 567 F.2d 897 (9th Cir.1978) is on all fours and wholly persuasive. *McMorris* upheld an identical court rule requiring searches, implemented in an identical manner to the one here, because of concerns stemming from threats and episodes of violence affecting public buildings such as the Hall of Justice (at issue in *McMorris* ) and the Civic Center (at issue here). Defendants point to the late 1983 murders of Judge Henry Gentile and attorney John Piszczor in a Civic Center courtroom as supporting the rule at issue here.

*Id.* at 31. Justice appealed to us, *pro se;* he had represented himself in the district court as well. We asked attorney Spencer Waller to file an amicus curiae brief on Justice's behalf. In his excellent brief and forceful oral argument Waller contended that Justice's complaint should not have been dismissed in the absence of any evidence about the nature of the search that Justice would have been required to undergo, the defendants having submitted no affidavits or other evidentiary materials in support of their motion to dismiss.

Waller is correct that just because an airport-style metal-detector search of public buildings in San Francisco has been upheld, it doesn't follow that any search, however intrusive, of persons wanting to enter the Daley Center must be reasonable, and therefore lawful, under the Fourth and Fourteenth Amendments. It would require more than one shooting incident to justify forcing every person who wanted to enter a courthouse in order to file a pleading or argue a motion or watch a trial to strip naked so that his bodily orifices could be inspected for weapons. The reasonableness of a search depends not only on the need to search but also on how intrusive the search is in relation to the need. *O'Connor v. Ortega,* —— U.S. ——, 107 S.Ct. 1492, 1502, 94 L.Ed.2d 714 (1987);

*Delaware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979).

■ It is a matter of common knowledge that the Daley Center, which is only a few blocks from the federal courthouse in which this appeal was argued and the members of this panel have their chambers, uses the standard airport-style metal-detector method of search; and this method, being unintrusive, is constitutionally unproblematic where as here there is some reason—there needn't be much—to expect that armed and dangerous people might otherwise enter. See, e.g., *United States v. Henry*, 615 F.2d 1223, 1228–29 (9th Cir. 1980); *McMorris v. Alioto*, 567 F.2d 897 (9th Cir.1978). The shooting incident that the district court mentioned supplied reason enough; less would have sufficed. And while we don't know whether Justice himself is dangerous, we infer from the characterization in his brief of the defendants as "weaponless wimps," and the statement in that brief that the defendants "should assume that each and every citizen is bearing arms, as a right, not by permit," that he wants to enter the Daley Center armed. He makes no argument that the search would impede his access to the courts by making the defendants privy to confidential legal papers, compare *Henry v. Perrin*, 609 F.2d 1010 (1st Cir.1979), or indeed that he has any business in the courts that cannot be handled by mail but instead requires his personal presence.

The defendants, however, neglected to submit to the district court an affidavit describing the method of search used at the Daley Center. We asked their counsel at argument why this simple step had been omitted. She replied that she thought the district court and this court could take judicial notice of Chief Judge Comerford's order requiring that entrants into the Daley Center be searched. We asked whether the order is published; she said no, but that it was posted on the wall of the Daley Center. We asked her whether we can take judicial notice of placards and she wisely acknowledged that we could not. On rebuttal the amicus curiae told us that he had called Chief Judge Comerford's

chambers and asked for a copy of the order—and had been told there was no such order. If true, this is a serious oversight, but it is not a fact properly before us on this appeal.

■ There was no basis for invoking the doctrine of judicial notice in this case, see, e.g., *Powers v. Dole*, 782 F.2d 689, 695 n. 2 (7th Cir.1986) ("Judicial notice of an unauthenticated government record is improper"); cf. McCormick on Evidence § 335, at pp. 939–40 (3d ed. 1984), and hence there was no excuse for the defendants' omitting the simple step of filing an affidavit explaining the nature of the search to which Justice would be subjected if he wanted to enter the Daley Center. Although Justice in his reply to the motion to dismiss his complaint stated that the searches "involve the use of a metal detector and necessitate the emptying of pockets and visual inspections of hand luggage. A further search is required when the metal detector sounds ...," we cannot treat this statement as a concession that the method of search is no more intrusive than the standard airport search, for there is no evidence concerning the nature of the "further search" to which a person would be subject if the metal detector sounds. Suppose that every time a person activated a metal detector at an airport, he was subjected not to a pat-down search or to inspection by a hand-held metal detector, but to a strip search, as a condition of being allowed to board a plane. It is not obvious that so intrusive a form of search would be justified in every case where the metal detector sounds. Nor—what is more to the point—do the defendants argue that such a search would be justified in the circumstances of this case. Of course it is very unlikely that they do or would conduct such a search of a person who activated the metal detector at the Daley Center, but there is no evidence on this point and we cannot resolve the factual question raised by Justice's pleadings on the basis of speculation, however plausible, concerning the nature of the follow-up search that the defendants would conduct of Justice if he activated the metal detector.

In *McMorris*, on which the defendants and the district court alike relied, the evidence showed that the follow-up search was a pat-down search. See 567 F.2d at 899. It thus was plain that the procedure of which McMorris was complaining was not highly intrusive and hence that it was proper despite its dragnet character. Compare *Downing v. Kunzig*, 454 F.2d 1230 (6th Cir.1972) (package and briefcase search of persons entering federal buildings). Here we do not know how intrusive the procedure established by the defendants was. We can guess, but that isn't good enough.

█ However, the judgment for the defendants must be affirmed anyway. First, it is plain from Justice's pleadings that his basic concern is not that the defendants' procedure for searching persons wanting to enter the Daley Center might be unduly intrusive but that even the superficial first-stage search with the metal detector would reveal that Justice is carrying a gun, so he would be barred from entering. Apparently what he seeks is the right to enter the Daley Center armed. The question whether he has such a right is independent of the means by which the defendants might discover he was exercising it and might seek to thwart him. Yet apart from a vague and legally ungrounded invocation of a supposed pre-constitutional right to bear arms—a Hobbesian right of self-defense in the state of nature—and a claim under the Second Amendment, which guarantees the right to bear arms but has been held not to be enforceable against state action, *Presser v. Illinois*, 116 U.S. 252, 265, 6 S.Ct. 580, 584, 29 L.Ed. 615 (1886); *Quilici v. Village of Morton Grove*, 695 F.2d 261, 269–70 (7th Cir.1982), Justice has made no effort to show that he has a right, enforceable by suit in federal district court, to go armed into the Daley Center.

Second, Justice has throughout this proceeding been emphatic in his refusal to base his case on the Fourteenth Amendment, though it is only through that amendment that the principles of the Fourth Amendment governing unreasonable searches and seizures become applicable to state officers. One of the argument headings in his main brief is, "The Fourteenth Amendment Does Not Apply"; this was also the position he took in the district court. He believes that the Fourteenth Amendment was not validly ratified. Further, he does not want to claim rights under an amendment primarily designed, in his words, to benefit members of the "African race." The district court brushed aside Justice's disclaimer of reliance on the Fourteenth Amendment as "misguided." 649 F.Supp. at 31. The amicus curiae has done likewise.

█ The reiteration by Justice in both his appeal briefs of his disclaimer of reliance on the Fourteenth Amendment, after being told by the district court that this was a "misguided statement that would talk him right out of court," *id.*, was not inadvertent. Although Justice is not a lawyer, his briefs are coherent and demonstrate an ability to understand legal reasoning. It is apparent that he is deeply offended at the thought of sheltering under an amendment primarily designed to benefit black people, and that he would rather lose his case than be lumped in with them. It is true that his preferred grounds—the natural right of self-defense to which we referred earlier, and the Fourth Amendment somehow viewed as applicable to state as well as federal action entirely apart from the Fourteenth Amendment—have no standing in federal law; but if a competent adult chooses with his eyes wide open to disclaim the only colorable legal ground for the relief he seeks, we can think of no reason not to comply with his wishes. Like any other litigant, one not represented by counsel can forfeit meritorious grounds by failing to raise them. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Even more clearly can he forfeit such a ground by deliberately refusing to raise it after being told that if he fails to raise it his case will be dismissed. Paternalism has made giant strides in modern society but it has not reached the point where a federal court must compel a litigant to present his case on grounds that the litigant deliberately rejects.

**1052**

Indeed, we might well be violating Mr. Justice's rights under the First Amendment if we forced him to maintain this suit under the Fourteenth Amendment. It would compel an association that he finds offensive on ideological grounds. See, e.g., *Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977); *West Virginia State Board of Education v. Barnette,* 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). He had a choice between principle and interest—between repudiating reliance on the Fourteenth Amendment, which he abhors, and swallowing his abhorrence and pleading under it. He chose principle. We are bound by his choice whatever we personally might think of it. See *Gay Student Services v. Texas A & M University,* 737 F.2d 1317, 1329 (5th Cir.1984).

AFFIRMED.