**LANDAU & CLEARY, LTD.,**
**Plaintiff–Appellee,**

v.

**HRIBAR TRUCKING, INC., a Wisconsin Corporation, and Leo Hribar,**
**Defendants–Appellants.**

**No. 87–1467.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 28, 1987.

Decided Jan. 31, 1989.

---

Gerald P. Boyle, Gerald P. Boyle, S.C., Milwaukee, Wis., for defendants-appellants.

Steven L. Sommerfield, Landau & Cleary, Ltd., Downers Grove, Ill., for plaintiff-appellee.

Before EASTERBROOK, RIPPLE, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

■ This is a truly impossible fact scenario. It is complicated further by the mistakes of counsel, the death of a party, the unusual use of the Federal Rules of Civil Procedure and the involvement of both state and federal courts. There are a myriad of alternative solutions, each of which is riddled with land mines. We affirm the district judge's denial of defendants-appellants' "motion for recoupment" for the reasons set out below.[1]

## I. Facts

Leo Hribar was president of the Wisconsin corporation Hribar Trucking, Inc. He retained Eliot Landau, an attorney with the Illinois law firm of Landau & Cleary, to represent his company in an appeal to this court regarding a pension fund dispute.[2]

---

1. We originally considered remanding this case for the district court to develop the factual record to determine whether this case should be dismissed for failure to join an indispensable party under Fed.R.Civ.P. 19(b). Once trial has occurred, however, and a judgment has been entered, a much greater showing of opposing interests is required to dismiss. *See Provident*

*Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

2. Central States Pension Fund allegedly overbilled Hribar Trucking by erroneously including truck drivers in their calculations. *See Central States, Southeast and Southwest Areas Pension*

Hribar signed an agreement with Landau and authorized Landau to retain the Illinois accounting firm of Sweeney Financial Analysts to examine membership contribution reports prepared by a pension fund. This work was done with Hribar's knowledge and consent, and Mr. Hribar testified that *he retained Sweeney* to do an analysis and audit of the work done by Central States Pension Fund.

Landau sued Hribar in Illinois state court for failing to pay the $28,035.98 bill tendered for legal services. The case was removed on March 25, 1985 to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. §§ 1332 and 1441(a). Landau filed an amended complaint on August 27, 1985. It included a $15,382.40 claim for Sweeney's services, but did not name Sweeney as an additional party. The district court held a bench trial, and on November 19, 1985, it ordered judgment in favor of Landau on the contract dispute, but denied Landau's claim regarding prejudgment interest. Finding against Hribar, the exact language of Judge Holderman's order was "... judgment is entered in favor of plaintiff on Count I of the complaint in the amount of $43,418.38 ($28,035.98 for plaintiff; $15,382.40 for Sweeney Financial Analysts, Ltd.). No interest is assessed thereon."

Following the entry of judgment on November 20, 1985, the proceedings were automatically stayed for ten days pursuant to Fed.R.Civ.P. 62(a). Presumably, during those ten days the parties were negotiating the terms of a supersedeas bond. The record does not reveal a stay, or a request for a stay, until December 20, 1985, when the court granted Hribar a stay of enforce-

ment until the posting of the $48,444.40 supersedeas bond on January 6, 1986. Thus, the judgment was technically enforceable from November 30, 1985, until December 20, 1985. It was during this time period that the current chaos germinated.

On December 4, 1985, Sweeney, who was not involved in the federal litigation, took advantage of the district court's judgment naming him (apparently as a non-party under Fed.R.Civ.P. 71) and sought garnishment against Hribar and its bank in Wisconsin state court. Hribar's bank was served with a garnishment summons and complaint the same day, and it filed an answer on December 9, 1985. On December 9, 1985, the state judge issued a garnishment order in favor of Sweeney and against Hribar Trucking, Inc. for $15,382.40. This amount apparently was paid to Sweeney.[3]

On December 18, 1985, Hribar filed a motion in the federal district court for a supersedeas bond. The federal court established the term of the bond and granted a temporary stay of enforcement on December 20, 1985. Also on December 20, 1985, Hribar filed a motion to vacate the garnishment order in the Wisconsin court. The state court denied this motion, apparently on January 6, 1986.[4]

During the time of Sweeney's questionable action, Landau and Hribar were still negotiating the terms of the supersedeas bond. The bond eventually was posted on January 27, 1986. Without reference to Sweeney's Wisconsin suit, both Landau and Hribar sought relief in this court; Landau appealing the denial of prejudgment interest and Hribar appealing the judgment

---

*Fund v. Hribar Trucking, Inc.*, 685 F.2d 434 (7th Cir.1982) (unpublished).

**3.** Hribar Trucking, Inc. was not served with a garnishment summons or complaint until December 11, 1985—two days after the judgment was signed. During this time Leo Hribar was in the hospital and was unaware of the proceedings. He died and his son Lee took over both the business and the lawsuit.

**4.** Although the record contains a minute order to this effect dated January 6, 1986, the judge's order memorializing the January 6 proceedings

is dated January 21, 1986. Hribar's motion to vacate, signed by attorney Roland Steinle, III, included several claims. One was based on the fact that the principal defendant had not been served with a complaint or given an opportunity to defend. Hribar also based his motion on the fact that Sweeney was "not a named plaintiff in the underlying action and the judgment did not provide for payment to the plaintiff." The Wisconsin judge ignored those claims and referred exclusively to Hribar's weakest claim—venue— in denying the motion to vacate.

against it on the contract claim. We affirmed the district court on December 3, 1986, and remanded for a determination of prejudgment interest. *See Landau & Cleary, Ltd. v. Hribar Trucking, Inc.*, 807 F.2d 91 (7th Cir.1986).

After the appeal to this court, Landau and Hribar entered into a stipulation on December 24, 1986. Pursuant to that agreement, Hribar authorized payment to Landau of $48,444.40 (which included postjudgment interest and the amount directed by the district court to go to Sweeney) from the letter of credit posted by it as a supersedeas bond. This stipulation was filed with the district court on December 30, 1986, and an Order and Judgment on Remand was entered the same day. Michael Steinle, who had replaced Roland Steinle, III, in representing Hribar, apparently was unaware that his client had paid Sweeney pursuant to the Wisconsin judgment. Upon discovering that Hribar had entered into the stipulation with Landau without consideration of the Sweeney action, Michael Steinle telephoned attorney Sommerfield in the office of Landau and Cleary.[5] Sommerfield, according to Steinle, assured him that Landau would return the Sweeney portion of the district court judgment to Hribar. According to Steinle, Eliot Landau later called Gerald Boyle and reneged on Sommerfield's statement. Landau allegedly said: "We are not giving you back the $15,000, and if you entered into the stipulation erroneously, that's too bad, because your action is against Sweeney and it's not an action against us."[6]

Hribar next filed a "motion for recoupment"[7] in the federal district court in Illinois seeking the $15,382.40 plus interest it paid Landau to settle its debt with Sweeney. No responsive pleadings were filed until February 20, 1987, when a hearing on the "motion for recoupment" was held in the district court. The hearing was not for the submission of evidence, but merely an opportunity for counsel to address the court. During the hearing, Hribar argued that recoupment was in order because it had paid twice for Sweeney's services. Landau's response to Hribar's motion presumed that the motion was a motion under Rule 60(b) of the Federal Rules of Civil Procedure. Based on this premise, Landau argued in response, both in writing and at the hearing, that Hribar's motion was nei-

---

5. Gerald Boyle was the attorney of record for Hribar. Roland Steinle, III, of Boyle's office, however, performed much of the initial work on the case. Steinle's brother Michael, a law clerk in Boyle's office, assisted with the case to a limited extent while clerking. After graduating from law school, Michael joined Boyle's office. Roland moved to another state.

6. Although seemingly impossible, this scenario becomes even more complicated. In addition to its problems in collecting from Hribar, Landau had also been unsuccessfully trying to collect from Sweeney on another matter. The law firm decided to engage in a self-help remedy; it kept the money Hribar paid pursuant to the judgment against it in district court in order to offset the money it was owed by Sweeney. At the hearing on the "motion for recoupment," Landau told the district court that Sweeney owed them over $135,000 and that Landau had won a judgment against Sweeney a week earlier and that "a portion was set aside on that." However, Landau did not disclose to the district court how large a portion was set aside, nor whether it was the sum paid by Hribar.

7. Although the Federal Rules of Civil Procedure do not make any reference to such motions,

BLACK'S LAW DICTIONARY defines "recoupment" as follows:

> To recover a loss by a subsequent gain. In pleading, to set forth a claim against the plaintiff when an action is brought against one as a defendant. A keeping back something which is due, because there is an equitable reason to withhold it. A right of the defendant to have a deduction from the amount of the plaintiff's damages, for the reason that the plaintiff has not complied with the cross-obligations or independent covenants arising under the same contract. It implies that plaintiff has cause of action, but asserts that defendant has counter cause of action growing out of breach of some other part of same contract on which plaintiff's action is founded or for some cause connected with contract....

BLACK'S LAW DICTIONARY 1146 (5th ed.1979). This motion for recoupment is perhaps a variation of one of the ancient writs, such as *coram nobis* or *audita querela,* used to attack judgments. These writs were replaced by Fed.R.Civ. P. 60(b). The rule of civil procedure providing relief the most analogous to that Hribar was seeking is Rule 60(b).

ther timely filed nor warranted relief under Rule 60(b)(1).

■■■ It is the substance of the motion, and not the label the moving party places upon it, that determines whether a motion is a Rule 60(b) motion. *See, e.g., Smith v. United States Parole Comm'n,* 721 F.2d 346, 348 (11th Cir.1983). It is clear to us, however, that Hribar's "motion for recoupment" was not a Rule 60(b) motion. Hribar's attorney's final comment to the district judge was *"I'm not attacking the judgment.* I'm just saying the parties who were entitled to the money have now gotten the money, and Landau and Cleary unjustly have $15,000 plus interest in their possession. That's it." (emphasis added). Hribar's counsel declined several opportunities, even as recently as in its brief and in the oral argument before this court, to assert a Rule 60(b) motion for relief from judgment. Because Hribar specifically claimed that he was not attacking the judgment, moreover, his motion should not qualify as an independent action permitted to be brought under this rule. In other words, a proper "independent action" must seek the same type of relief one seeks under Rule 60(b). *Cf. Hadden v. Rumsey Prods.,* 196 F.2d 92, 95 (2d Cir.1952) (debtors' petition seeking relief from judgment allegedly obtained by fraud was properly "treated as an *independent action to obtain relief from the ... judgment"* under Rule 60(b)) (emphasis added). The advisory committee notes to Rule 60(b) are not inconsistent, moreover, with our reading of this rule, as they make reference to "a new or independent action *to obtain relief from a judgment."* Fed.R.Civ.P. 60 advisory committee's note (1946 Amendment, Note to Subdivision (b)) (emphasis added).

In any event, the "motion for recoupment" was denied on February 27, 1987, and Judge Holderman wrote that "appellant's actions, if any, should be brought against Sweeney ... and not ... Landau" because Hribar "failed to properly protect itself" from Sweeney's unilateral conduct. Landau appeals the district court's denial of his motion for recoupment.

## II. Rule 60(b)

That Hribar has twice paid for the accounting services provided by Sweeney is clear. What is not clear is whether Landau or Sweeney should return the money to Hribar. This court is not unsympathetic to Hribar's plight. Everyone involved with this dispute seeks to blame someone else.

Landau asserts that Hribar's proper recourse is to collect the money from Sweeney. At the hearing on the "motion for recoupment," Landau informed the district court that "Mr. Sweeney pulled a fast one." Landau accused Sweeney of authorizing Landau to use the Hribar judgment to offset the money Sweeney owed Landau and seeking additional payment from Hribar, to which, according to Landau's version of the story, Sweeney knew it was not entitled.

To the contrary, in an affidavit which Hribar presented to the district court, David Sweeney denies authorizing Landau to offset its bill with the Hribar judgment. The affidavit states that Sweeney informed Landau of the Wisconsin garnishment action against Hribar and that Hribar should get the money from Landau.[8]

[Hribar is] ... indebted to the plaintiff [Sweeney] in the sum of $15,382.40 *over and above all offsets,* upon a judgment entered in favor of the Landau and Cleary, Ltd., ($28,035.98 for Landau and Cleary, Ltd.; $15,382.40 for Sweeney Financial Analysts, Ltd.) plaintiff and against the defendants in the United States District Court, Northern District of Illinois, Eastern Division, case no. 85 C 2442 on November 19, 1985; said judgment being docketed in Waukesha County on the 3rd day of December, 1985 as docket no. 54267, that an execution against the property of the de-

---

**8.** There are unresolved disputes between Landau and Sweeney which have a bearing on the present litigation. Landau asserted that (1) they had no knowledge of Sweeney's Wisconsin action until much after the fact; and (2) Sweeney authorized them to use the Hribar judgment as an offset against the money Sweeney alleged owed them. On the other hand, Sweeney states in an affidavit admitted in the district court that (1) he advised Landau of the Wisconsin action; and (2) he never authorized Landau to offset the Hribar judgment against any sums Sweeney owed Landau. In light of this, it is peculiar that Sweeney included the following language in paragraph 5 of his garnishment complaint that:

Hribar's attempts to recoup the $15,382.40 from both Landau and Sweeney have failed. The district court agreed with Landau that Hribar should look to Sweeney for relief. The state court, in denying Hribar's motion to vacate, seemed to leave Hribar with no choice but to pursue Landau in federal court. This places Hribar in a quandary—both the state court and the district court have shut their doors to his pleas for help, and each of the parties he has paid advise him to seek relief from the other.

It would appear that all of the parties involved in this case contributed in some manner to the present confused state of affairs. For its part, Landau has been less-than-candid with us [9] by not informing this court (until oral argument) of their contention that Sweeney allegedly owed them money; their brief was conspicuously void of any indication that they were retaining the money designated for Sweeney to offset the money Sweeney allegedly owed them.

The district court, moreover, improvidently worded its judgment in this case. While the judgment makes reference to the non-party Sweeney, it does so merely parenthetically. Whether the district court intended for this to be sufficient to allow Sweeney to obtain satisfaction under Rule 71 in another court is unlikely, but unclear.

██ It is entirely possible, had Hribar filed a Rule 60(b) motion, that the district court would have been able to fashion relief for him thereunder. Hribar did not, however, file such a motion, and indeed foreswore reliance on Rule 60(b). Thus, we affirm the district court's denial of the motion for recoupment. Hribar's only available legal remedy, as we will discuss below, was Rule 60(b), not the so-called "motion for recoupment." Since Hribar did not make a Rule 60(b) motion, and in fact disclaimed reliance on that rule, he is deemed to have waived his rights under it.

We can only surmise as to Hribar's rationale in forbearing reliance on what appears to be its most likely legal remedy. Perhaps Hribar's counsel reasoned that it was not the actual *judgment* he was attacking, but rather the fact that it had been partially satisfied twice. Fed.R.Civ.P. 60(b)(5), however, specifically provides relief in such situations.

Hribar argued in its brief on appeal as follows:

> Defendant-appellants' argument is not under Rule 60(b) of the F.R.Civ.P. Defendant-appellants were in no position to bring a Rule 60(b) motion before appeal as they were powerless to do so because their notice of appeal was filed the same day that defendant-appellant Hribar was given notice of the garnishment action in Wisconsin Circuit Court. A District Court cannot vacate, alter or amend the Judgment under Rule 59 or 60, F.R. Civ.P., except with permission of the appellate court.... Defendant-appellants position was that they would file their motion for recoupment after the appeal had been completed to get credit for the monies already paid to Sweeney Financial Analysts, Ltd.

(Appellant's Brief at 12–13) (citations omitted).

We presume, since the stipulation and the payment to Landau & Cleary did not occur until after this court affirmed the district court's judgment, that this is an argument that once a judgment has been affirmed on appeal, leave of the appellate court is required to bring a Rule 60(b) motion. This argument, although once the law, is no longer correct. *See Standard*

---

fendants has issued or is issuable (emphasis added).

9. Although the issue was discussed fleetingly in the district court, it was not raised in either the brief or reply brief of counsel. It was not until oral argument that Landau & Cleary's attorney first informed this court that:

> the reason the money ... was held was that Sweeney Financial Analysts, in addition to

having been retained by Landau & Cleary as a consultant, also utilized the professional services of Landau & Cleary on other matters, for which they were indebted to Landau & Cleary, Ltd. ... We felt that we were entitled under Illinois law to have a retaining lien on those proceeds which came to us for amounts due to Landau & Cleary from Sweeney Financial Analysts.

*Oil Co. of California v. United States,* 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976). Although the Seventh Circuit has held that leave of an appellate court is required to bring an independent action under Rule 60(b), *Geuder, Paeschke & Frey Co. v. Clark,* 288 F.2d 1, 3–4 (7th Cir.1961), *cert. denied,* 368 U.S. 826, 82 S.Ct. 47, 7 L.Ed.2d 30, it is not clear that this still holds true in light of the Supreme Court's holding in *Standard Oil.* Even if our leave were required, however, this still would not excuse Hribar from having sought it.

Perhaps Hribar's attorney felt constrained by the relief offered under Rule 60(b), or he recognized that the Federal Rules of Civil Procedure did not provide an efficient way for him to have that money returned to him. Thus, he fashioned his own remedy—namely a "motion for recoupment." Hribar's motion for recoupment clearly is not a motion pursuant to Fed.R. Civ.P. 60(b).

▬ The fact, however, that the federal rules do not specifically authorize or describe a particular judicial procedure does not give rise to prohibition of that procedure by negative implication. *Link v. Wabash R.R.,* 370 U.S. 626, 628, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962). The Supreme Court in *Link* noted that the ability of the district courts to take procedural actions not covered by the federal rules may stem from an " 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." 370 U.S. at 632, 82 S.Ct. at 1389. *See also Newman–Green, Inc. v. Alfonso– Larrain R.,* 854 F.2d 916, 921–22 (7th Cir. 1988) (en banc), *cert. granted,* —— U.S. ——, 109 S.Ct. 781, 102 L.Ed.2d 773 (1989) ("Federal courts possess not only the powers conferred on them by statute but also inherent powers necessary to the courts' effective functioning as courts . . ."). This inherent authority, however, may not be exercised in a manner inconsistent with the Federal Rules of Civil Procedure. *Strandell v. Jackson County,* 838 F.2d 884, 886 (7th Cir.1988). That is, where the rules directly mandate a specific procedure to the exclusion of others, inherent authority is proscribed.

In this case, to authorize relief under a "motion for recoupment," and not Rule 60(b), would be contrary to the express prohibition of the latter. Rule 60(b) provides in part:

> Writs of coram nobis, coram vobis, audita querela and bills of review and bills in the nature of a bill of review, are abolished, *and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.*

(emphasis added). The advisory committee notes to Rule 60 also make it clear that the Federal Rules are supposed to provide all available relief from judgments. They state:

> Since the rules have been in force, decisions have been rendered that the use of bills of review, coram nobis, or audita querela, to obtain relief from final judgments is still proper, and that various remedies of this kind still exist although they are not mentioned in the rules and the practice is not prescribed in the rules. *It is obvious that the rules should be complete in this respect and define the practice with respect to any existing rights or remedies to obtain relief from final judgments.*

Fed.R.Civ.P. 60 advisory committee's note (1946 Amendment, Note to Subdivision (b)) (emphasis added).

Since Rule 60(b) forbids motions to obtain relief from a judgment other than those made under the Federal Rules,[10] it would not have been within the district judge's inherent authority to grant Hribar's motion. Thus, he did not abuse his discretion in denying it. Since the only available means to do what Hribar sought to do was by resort to Rule 60(b), and Hribar expressly disclaimed reliance on it,

---

**10.** Rule 59(e) also covers relief from judgments. It provides for the making of motions to alter or amend the judgment.

we have no choice but to allow him to waive whatever rights he might have had under that rule. *Justice v. Elrod,* 832 F.2d 1048, 1051 (7th Cir.1987). Hence, we affirm the district court.

### III. Conclusion

We AFFIRM the district court's denial of Hribar's motion for recoupment. The district judge had no authority to grant such a motion, and Hribar waived his rights under his appropriate legal remedy.

RIPPLE, Circuit Judge.

I concur in the result. In my view, the obligation to consider the substance of the motion, not the label the moving party places upon it, required the district court to consider the "motion for recoupment" a Rule 60(b) motion. However, on this record, I cannot say that the district court abused his discretion in declining to grant relief. Accordingly, I join the judgment of the court.