# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 17, 2022

Lyle W. Cayce
Clerk

No. 21-30489

Rene Joseph Foley Bey; Julia Mae Foley Bey,

*Plaintiffs—Appellants*,

*versus*

Steve Prator, *Sheriff*; Mark Terry, *Deputy Sheriff*;
L. C. Cope, *Deputy Sheriff*; Glyn Best, *Deputy Sheriff*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Louisiana
No. 5:19-CV-1262

Before Smith, Barksdale, and Haynes, *Circuit Judges*.

Per Curiam:

Rene Foley Bey and Julia Foley Bey ("plaintiffs") appeal a summary judgment and the denial of recusal. We find no error and affirm.

I.

Plaintiffs, who identify as Moorish Americans, sought to enter the Caddo Parish Courthouse to file documents with the court clerk. Upon arriving at the security-screening station, plaintiffs informed the officers on duty that they wished to enter without passing through the security screening,

which, they asserted, would violate their rights under the Fourth Amendment and their rights as Moorish Americans under the United States-Morocco Treaty of Peace and Friendship. The officers informed plaintiffs that they could not enter without being screened and were required to leave the courthouse if they did not agree. After plaintiffs' repeated refusals to depart, the officers stated they would count to three and, if plaintiffs refused to leave, they would be arrested. They did not depart and were arrested, charged with violating Louisiana Revised Statutes § 14:63.3, "Entry on or remaining in places or on land after being forbidden."

Plaintiffs were taken to the courthouse basement, searched, and taken to the Caddo Correctional Center. They allege that, during that search, the officers removed their religious headwear, namely, a fez worn by Rene Foley Bey and a turban worn by Julia Foley Bey. Plaintiffs also assert that they were "subjected to mistreatment and harsh conditions" while in custody. They were released early the next day after friends posted bail; the district attorney ultimately dismissed the charges.

Proceeding *pro se*, plaintiffs brought a litany of claims against various officials serving in Caddo Parish and the Louisiana state government based on their actions taken during the arrest. Some of the defendants were dropped from the amended complaint, while others successfully moved to dismiss.[1] Ultimately, federal claims under 42 U.S.C. § 1983 and state-law claims against the three arresting officers (Mark Terry, L.C. Cope, and Glyn Best), and state-law claims against Sheriff Steve Prator remained. The four remaining defendants moved for summary judgment, asserting that the officers were protected by qualified immunity, which the district court granted on the magistrate judge's recommendation. Plaintiffs also moved for recusal

---

[1] Plaintiffs do not appeal these dismissals.

No. 21-30489

of the magistrate judge, which the district court denied. Plaintiffs, *pro se*, timely appeal.

## II.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[2] Consistent with our standard of review for summary judgments, the legal issues underlying the district court's qualified-immunity ruling is reviewed *de novo*.[3] When considering whether summary judgment was appropriate, "we 'view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.'"[4] "A qualified immunity defense alters the usual summary judgment burden of proof" because the plaintiff, to overcome qualified immunity, "must rebut the defense by establishing a genuine [dispute of material fact] as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

Although the complaint raised claims running the gamut from false arrest to genocide, the district court isolated the claims as being two-fold: The officers (1) perpetrated a false arrest without probable cause in violation of the Fourth Amendment and (2) violated plaintiffs' religious rights by removing and searching their religious headgear during that arrest. "A search

---

[2] *Davidson v. City of Stafford*, 848 F.3d 384, 391 (5th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

[3] *Trammell v. Fruge*, 868 F.3d 332, 338 (5th Cir. 2017).

[4] *Hanks*, 853 F.3d at 743 (quoting *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016)).

and seizure of a person must be based on probable cause particularized with respect to that person unless a constitutionally adequate substitute for probable cause exists." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 208 (5th Cir. 2009). Because of the possibility of qualified immunity, however, a plaintiff seeking to recover damages ion an action under § 1983 for a false arrest must prove not only that probable cause did not exist but also that "the officers were objectively unreasonable in believing there was probable cause for the arrest." *Davidson*, 848 F.3d at 391. Therefore, even those officers "who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity."[5]

The plaintiffs have not met that standard. The officers arrested them for violating Louisiana Revised Statutes § 14:63.3, which states,

> No person shall without authority go into or upon or remain in or upon . . . any structure . . . which belongs to another, including public buildings and structures . . . after having been forbidden to do so, either orally or in writing, . . . by any owner, lessee, or custodian of the property or by any other authorized person.

The summary judgment evidence, including videos of plaintiffs' encounter with the officers and their own and the officers' affidavits, demonstrate that, at the very least, the officers reasonably thought there was probable cause to arrest under that statute. The plaintiffs attempted to enter the courthouse without passing through security screening. The officers, who are authorized to control entry into the courthouse, refused and told the plaintiffs that if they would not pass through security, they had to leave. They refused (*i.e.*, remained in a structure after having been forbidden to do so).

---

[5] *Club Retro*, 568 F.3d at 206 (quoting *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000)).

No. 21-30489

There was at least arguable probable cause to arrest under Section 14:63.3, so the officers were entitled to qualified immunity.

Nor can plaintiffs point to any other clearly established law that rendered the officers' actions objectively unreasonable. They cannot point to Fourth Amendment jurisprudence that clearly establishes that the officers were required to allow plaintiffs into the courthouse without passing through routine security screening. Indeed, the relevant authorities suggest the opposite and certainly do not clearly establish that the screening was unconstitutional.[6] Plaintiffs also cannot point to the 1836 United States-Morocco Treaty of Peace and Friendship as clearly establishing a right for Moorish Americans to enter the courthouse as a port of commerce without any screening.[7] It is not clearly established that the officers were required to allow plaintiffs to pass through security screening; nor is it clearly established that the officers were not allowed to ask them to leave once they refused and then arrest them once they would not leave after being told to do so.

Further, it was not clearly established that once plaintiffs had been arrested, the officers were not allowed to search their headgear solely because it had religious significance. "When an arrest is made, it is reasonable for the arresting officer to search the person arrested." *Chimel v. California*, 395 U.S. 752, 762–63 (1969). Moreover, plaintiffs have pointed to no precedent that abrogates the general "search incident to arrest" rule when religious headwear is involved. Accordingly, the district court correctly granted summary

---

[6] *See, e.g.*, *McMorris v. Alioto*, 567 F.2d 897, 899–900 (9th Cir. 1978); *Justice v. Elrod*, 832 F.2d 1048, 1051 (7th Cir. 1987).

[7] *Cf. United States v. James*, 328 F.3d 953, 954 (7th Cir. 2003) (explaining that "an ancient treaty between the United States and Morocco" does not allow those within the United States to ignore its laws because "[l]aws of the United States apply to all persons within its borders").

No. 21-30489

judgment on the ground of qualified immunity.[8]

There is no error in the district court's denial of the plaintiffs' motion for recusal of the magistrate judge. Plaintiffs rely on 28 U.S.C. § 455, which requires recusal "in any proceeding in which [the judge's] impartiality might reasonably be questioned," when the judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding," or when the judge either "served as [a] lawyer in the matter in controversy" or "a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter." "A motion to disqualify brought under 28 U.S.C. § 455 is 'committed to the sound discretion of the district judge,'" and so we review for abuse of discretion.[9]

The magistrate judge did not work on this case in private practice nor work with the defendants' counsel in the practice of law while he was working on this case. Nor is there evidence of any bias or knowledge of the case that would have required the district court, in its discretion, to order recusal. The most that plaintiffs can point to is that the magistrate judge went to law school

---

[8] For the same reasons, the district court was correct to grant summary judgment on the state-law false-arrest claims and to grant summary judgment for Sheriff Prator, who remained in the case only on the ground that he could be vicariously liable should the state-law claims succeed.

Lastly, plaintiffs are unable to save their case by pointing to any actions taken at the Caddo Criminal Center. The district court was correct that the named defendants associated with the Criminal Center had been dismissed and that the remaining named defendants were not present at the Criminal Center and had no role in the processing of plaintiffs there. Plaintiffs had the opportunity to conduct discovery and amend their complaint to add defendants who plaintiffs believed violated their rights during processing. They have not done so and therefore have no claims they can maintain based on those later events; final judgment was appropriate on all claims asserted.

[9] *Sensley v. Albritton*, 385 F.3d 591, 598 (5th Cir. 2004) (quoting *Chitimacha Tribe v. Harry L. Laws Co.*, 690 F.2d 1157, 1166 (5th Cir. 1982)).

with defendants' counsel and then served as a law clerk alongside him over thirty years ago. That is insufficient to require recusal, so the district court did not abuse its discretion. *See In re United States* (*Franco*), 158 F.3d 26, 33–34 (1st Cir. 1998).

AFFIRMED.